Brad D. Rose
M. Mona Simonian
Muzamil A. Huq
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100
*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIFESTYLE BRANDS HOLDINGS LLC,<br><br>      Plaintiff,<br><br>  - against -<br><br>WINNING RESOURCES LIMITED,<br><br>      Defendant. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Lifestyle Brands Holdings LLC ("Plaintiff" or "Lifestyle Brands"), by its attorneys Pryor Cashman LLP, alleges as follows against Defendant Winning Resources Limited ("Defendant" or "Winning Resources"):

### NATURE OF ACTION

1. This is an action arising out of Defendant Winning Resources Limited's breach of a certain Trademark License Agreement pursuant to which Defendant Winning Resources obtained a license to manufacture, distribute, and sell certain golf apparel – specifically men's woven shirts – under the Greg Norman brand and associated marks. Defendant failed to satisfy its obligations as licensee by, among other things, (1) repudiating the Trademark License Agreement, (2) refusing to pay Guaranteed Minimum Royalties due to Lifestyle Brands under the Trademark License Agreement; and (3) failing to use its best efforts and diligence to continuously sell,

distribute, advertise, and promote the licensed products pursuant to the terms of the Trademark License Agreement.

2. As a result of Defendant's breach, Lifestyle Brands has suffered monetary damages in an amount to be determined at trial, but in no event less than $250,000 plus interest, as well as costs and attorneys' fees.

## PARTIES

3. Plaintiff Lifestyle Brands is a Delaware limited liability company with its principal place of business at 850 Paterson Plank Road, Secaucus, New Jersey 07094.

4. Upon information and belief, Defendant Winning Resources is a New York corporation with its principal place of business at 347 Fifth Avenue, 4th Floor, Suite 400, New York, New York 10016.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, as this is a civil action between diverse parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendant, as Defendant is a citizen of New York, regularly conducts business in New York, and has purposefully availed itself of the privileges and benefits of the laws of New York.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as well as pursuant to a forum selection clause between the parties.

# FACTS

## I. Plaintiff And Its Business

8.  Plaintiff Lifestyle Brands is an affiliate of Tharanco Lifestyles, LLC d/b/a Greg Norman Collection, a leading worldwide marketer of golf-inspired sportswear.

9.  Established in 1992, Greg Norman Collection is built upon a unique combination of performance, luxury, and style.

10. Greg Norman Collection's product offering encompasses state-of-the-art fabric innovations as well as an extensive fashion range including tops, bottoms, outwear, and accessories.

## II. The Parties' Trademark License Agreement

11. On July 29, 2015, Lifestyle Brands and Winning Resources entered into a three-year Trademark License Agreement (the "License Agreement"), pursuant to which Lifestyle Brands granted Winning Resources an exclusive, non-transferable, non-assignable license (the "License") to use the following marks (the "Marks") in connection with the manufacture, promotion, distribution, and sale of high-quality men's woven shirts within the United States:

GREG NORMAN® in cl. 25, U.S. Reg. No. 2,007,271, registered October 8, 1996.



® in cl. 25, U.S. Reg. No. 2,153,257, registered April 28, 1998.



A true and correct copy of the License Agreement is annexed hereto as **Exhibit A**.

12. Under the License Agreement, Winning Resources, as licensee, was permitted to use the Marks solely through "Approved Channels of Distribution," which included "(a) sporting

goods stores, (b) high quality department stores that merchandise high quality golf clubs, footwear, apparel and accessories within the Territory, (c) high quality specialty chains and independent shops, (d) Off-Price Accounts [identified on Schedule B-2 of the License Agreement or others that were pre-approved in writing] and Closeout Accounts [identified on Schedule B-3 of the License Agreement or others that were pre-approved in writing]." Ex. A at §§3.1-3.2.

13. Winning Resources was not permitted to use the Marks through any channels of distribution that were not approved channels under the Agreement.

14. In consideration for the grant of this license, Winning Resources agreed to pay Lifestyle Brands certain royalties calculated pursuant to the specific terms set forth in the License Agreement.

15. Section 2.4 of the License Agreement requires that Winning Resources must realize certain minimum net sales and must pay to Lifestyle Brands certain "Guaranteed Minimum Royalties" ("GMR") equal to or in excess of the following:

| Contract Years During Term | Minimum Net Sales | GMR |
|---|---|---|
| June __, 2015 - December 31, 2016 | $ 400,000 | $ 20,000 |
| January 1, 2017 - December 31, 2017 | $ 800,000 | $ 40,000 |
| January 1, 2018 - December 31, 2018 | $ 1,300,000 | $ 65,000 |

Ex. A, § 2.4(a).

16. Section 2.4 of the License Agreement also provides that the GMR due shall be paid in four equal quarterly installments in advance of each quarter (with the exception of the GMR due for the first contract year, which was to be paid in two equal payments with the first installment paid upon signing and the second installment paid on January 1, 2016).

17. At all times relevant, Winning Resources understood that it was obligated to pay three years of GMR to Lifestyle Brands.

4

18. Pursuant to Section 4.1 of the License Agreement, Winning Resources agreed to, among other things, "use its best efforts and diligence to continuously sell, distribute, advertise, and promote the Products throughout the entire Territory." Ex. A, § 4.1.

19. Winning Resources further agreed that "its policy of sale and distribution of the [licensed products] will be of a high standard and to the best advantage of the [licensed products.]." *Id.*

20. Winning Resources further agreed that that it would "sell commercially reasonable quantities of a full, representative line of each category of [licensed products] throughout the Territory during each twelve (12) month period during the [3 year] Term." *Id.*

21. Winning Resources' obligations set forth in Section 4.1 constituted the bedrock of the License Agreement, as they were the bases upon which Lifestyle Brands expected to receive sufficiently valuable consideration for its grant of the exclusive License.

22. Pursuant to Section 7.2 of the License Agreement, in the event Winning Resources failed to make any payments due under the License Agreement, Winning Resources would be obligated to pay Lifestyle Brands interest at a rate of 3% above the prime rate then being charged in New York, New York by the JP Morgan Chase Bank, or the maximum legal rate permitted by law. *Id.* at §7.2(a).

23. In addition, if Winning Resources failed to cure the default for a period of 30 days after written notice by Lifestyle Brands, Lifestyle Brands had the right to terminate the License Agreement, "which termination may be automatic." *Id.*

24. Section 7.2(a) further provides that "Termination pursuant to this Section 7.2(a) is without prejudice to any remedy of Licensor for the recovery of any monies then due under this Agreement or with respect to any antecedent breach of this Agreement, **and without prejudice to**

5

**any other right of Licensor, including, without limitation, damages for breach."** *Id.* (emphasis added).

25. Section 7.2(b) also granted Lifestyle Brands the right to terminate the License Agreement if, among other things, Winning Resources discontinued the manufacture, distribution or sale of commercially significant quantities of the licensed products for a period of sixty days or more, or if Winning Resources failed to achieve the Minimum Net Sales in any Contract Year. *Id.* at §7.2(b).

### III.  Defendant's Breach Of Its Obligation To Pay Guaranteed Minimum Royalties

26. On September 8, 2016 – approximately one year into the three-year License Agreement – Winning Resources sent an email to Lifestyle Brands asserting that it wished to terminate the License Agreement. A true and correct copy of the September 8, 2016 email is annexed hereto as **Exhibit B.**

27. In this email, Winning Resources represented that it had "received a negative response from all" potential retail buyers. Ex. B.

28. Winning Resources then stated: "Hence, our team has decided it is best not to go forward with Greg Norman and instead focus on what is at hand with our other labels." *Id.*

29. Winning Resources further confirmed that it had not prepared any production of products under the License Agreement and had not realized any sales of the products.

30. On or around October 31, 2016, Winning Resources confirmed in another email its repudiation of the License Agreement.

31. However, pursuant to the terms of the License Agreement, Winning Resources did not have the right to unilaterally terminate the License Agreement.

32. As a result, Winning Resources' purported termination constituted repudiation and anticipatory breach of the License Agreement.

33. In response, Lifestyle Brands informed Winning Resources that, under the License Agreement, only Lifestyle Brands, as licensor, had the right to unilaterally terminate the License Agreement.

34. Notwithstanding that the License Agreement thus remained in full force and effect, on January 1, 2017, Winning Resources failed to pay to Lifestyle Brands its next installment of Guaranteed Minimum Royalties due under the License Agreement.

35. Significantly, under the License Agreement, Winning Resources was obligated to pay Guaranteed Minimum Royalties under the Agreement regardless of whether any sales were made.

36. To date, Winning Resources has not paid any portion of the Guaranteed Minimum Royalties, or any other royalties, due since January 1, 2017 to Lifestyle Brands.

37. In light of Winning Resources' repudiation of the License Agreement, and in an attempt to mitigate its damages, on January 6, 2017, pursuant to Section 7.2 of the License Agreement, counsel for Lifestyle Brands sent a Notice of Default to Winning Resources. A true and correct copy of the Notice of Default is annexed hereto as **Exhibit C**.

38. The Notice of Default provided Winning Resources with 30 days to cure its breach and stated that, if payment with interest were not received within such 30 days, the Agreement would automatically terminate, at which point Lifestyle Brands might exercise its rights and remedies at law.

39. On February 6, 2017, Winning Resources failed to cure its breach, and the Agreement automatically terminated.

40. Pursuant to Section 7.2(a) of the License Agreement, such termination was without prejudice to Lifestyle Brands' right to damages for breach of the License Agreement.

### IV. Defendant's Breach Of Its Obligation To Use "Best Efforts And Diligence"

41. In addition to failing to pay the Guaranteed Minimum Royalties due under Section 2.4(a) of the Agreement, Winning Resources also failed to use its "best efforts and diligence to continuously sell, distribute, advertise and promote the Products throughout the entire Territory" in direct breach of Section 4.1 of the License Agreement.

42. First, upon information and belief, Winning Resources procrastinated in hiring a designer and/or merchandiser for the men's woven shirt collection (the "Collection").

43. As a result of this delay, Winning Resources was late in getting the Collection off the ground.

44. When Winning Resources eventually did hire a designer, it chose an individual who, upon information and belief, had misrepresented her qualifications in developing menswear and was not competent.

45. Upon information and belief, during the first two weeks that the designer purported to be creating the Collection, she purchased $10,000 in samples, none of which were relevant to men's woven shirts.

46. Upon information and belief, the designer also repeatedly returned samples and then retained the monies she received for such returns for her own benefit.

47. In addition, Winning Resources repeatedly submitted proposed designs for approval that were rejected by Lifestyle Brands.

48. Eventually, the designer for Winning Resources completed the Collection.

49. However, the Collection she designed was unsatisfactory and substandard.

50. Indeed, several potential buyers in the retail industry noted that the Collection had no relevance to the customer demographics of the Greg Norman brand and thus, was not appropriate.

51. In addition, as a result of the poorly executed Collection, Winning Resources was unsuccessful in presenting the Collection to legitimate buyers.

52. Upon information and belief, Winning Resources made poor presentations to such buyers, further exacerbating the harm to the brand and, thus, to Lifestyle Brands, that had already been done by shopping an unsatisfactory Collection.

53. Furthermore, upon information and belief, in further breach of the License Agreement, Winning Resources met with several potential buyers that were outside the Approved Channels of Distribution without Lifestyle Brands' permission.

54. As a direct result of Winning Resources' lackluster effort, Lifestyle Brands' reputation with respect to a Greg Norman men's woven shirt collection has been tarnished with at least nine major retailers, causing monetary harm to Lifestyle Brands and the Marks.

55. Finally, upon information and belief, shortly after entering into the License Agreement, Winning Resources internally determined that it would not fulfill its obligations under the License Agreement.

56. Upon information and belief, in or around January 2016, representatives of Winning Resources internally discussed "cancelling" the License Agreement due to the lack of sales and incompetence of Winning Resources to create a successful Collection.

57. Winning Resources did not discuss this intention with Lifestyle Brands.

58. However, upon information and belief, faced with having to pay the GMR to Lifestyle Brands, Winning Resources elected to continue under the License Agreement for several

months, until it attempted to terminate the License Agreement by the September 2016 email referenced above.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

59. Plaintiff hereby repeats and realleges paragraphs 1-58 of the Complaint as if fully set forth herein.

60. Lifestyle Brands and Winning Resources were parties to the License Agreement.

61. Lifestyle Brands performed under the Agreement by granting Winning Resources an exclusive license to use its Marks in accordance with the terms and conditions set forth in the License Agreement.

62. Winning Resources breached the License Agreement by, among other things, failing to pay the Guaranteed Minimum Royalties due to Lifestyle Brands, failing to use its best efforts and diligence to sell, distribute, advertise and promote licensed products, and by repudiating the License Agreement without authority.

63. As a result, Lifestyle Brands lost the benefit of its bargain and has suffered damages in an amount to be determined at trial, but in no event less than $250,000 plus interest, costs and attorneys' fees.

## SECOND CLAIM
## ANTICPATORY REPUDIATION OF CONTRACT

64. Plaintiff hereby repeats and realleges paragraphs 1-63 of the Complaint as if fully set forth herein.

65. Lifestyle Brands and Winning Resources were parties to the License Agreement.

66. The License Agreement was effective for a term of 3 years and required Winning Resources to pay certain Guaranteed Minimum Royalties to Lifestyle Brands on a quarterly basis for the 3 year term.

67. Lifestyle Brands performed under the Agreement by granting Winning Resources an exclusive license to use its Marks in accordance with the terms and conditions set forth in the License Agreement.

68. In or around late summer 2016, well before the expiration of the 3 year term of the License Agreement, Winning Resources ceased performing all obligations under the agreement, including without limitation ceasing use of best efforts and diligence to sell, distribute, advertise and promote licensed products, and ceasing payment of the Guaranteed Minimum Royalties.

69. On or around September 8, 2016, Winning Resources informed Lifestyle Brands in writing of its unequivocal intention to cease performing and unilaterally terminate the License Agreement.

70. On or around October 31, 2016, Winning Resources re-confirmed in writing its unequivocal intention to terminate the License Agreement and its refusal to pay the Guaranteed Minimum Royalties or otherwise perform under the License Agreement.

71. As a result, Winning Resources anticipatorily repudiated the License Agreement causing damage to Lifestyle Brands, including monetary damages, lost profits, and reputational harm, in an amount to be determined at trial, but in no event less than $250,000 plus interest, costs and attorneys' fees.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

1. On its first cause of action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $250,000 plus interest, costs and attorneys' fees;

2. On its second cause of action, awarding Plaintiff damages in an amount to be determined at trial, but in no event less than $250,000 plus interest, costs and attorneys' fees; and

3. Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 5, 2017

PRYOR CASHMAN LLP

Brad D. Rose
M. Mona Simonian
Muzamil A. Huq
7 Times Square
New York, New York 10036
(212) 421-4100

*Attorneys for Plaintiff*